**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **JOSE L. TORRES,** | |
| **Plaintiff,** | **REPORT AND** |
| | **RECOMMENDATION** |
| - against - | |
| | **14-CV-3198 (RA) (RLE)** |
| **CAROLYN W. COLVIN,** | |
| **Acting Commissioner of Social Security,** | |
| **Defendant.** | |

---

**To the HONORABLE RONNIE ABRAMS, U.S.D.J.:**

## I.      INTRODUCTION

*Pro Se* Plaintiff Jose L. Torres ("Torres"), proceeding *in forma pauperis*, commenced this

action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3),

challenging a final decision of the Commissioner of Social Security (the "Commissioner")

denying his claim for disability benefits.  Torres argues that the Administrative Law Judge's

("ALJ") decision was erroneous, not supported by substantial evidence in the record and contrary

to the law.  Torres asks the Court to modify the Commissioner's decision and grant him

"maximum monthly disability insurance benefits and/or Supplemental Security Income ("SSI")

benefits, retroactive to the date of the initial disability, or in the alternative, to remand the case

for reconsideration of the evidence."  On January 30, 2015, the Commissioner moved for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, asking

the Court to affirm the Commissioner's decision and dismiss the Complaint.  For the reasons that

follow, I recommend that the Commissioner's motion be **GRANTED** and the case be

**DISMISSED**.

## II.   BACKGROUND

### A.   Procedural History

Torres claims he became disabled as of December 28, 2006.  (Transcript of Administrative Proceedings ("Tr.") at 10.)  He applied for disability insurance benefits and social security income on July 22, 2009.  (*Id.* at 17.)  The New York State Office of Temporary & Disability Assistance's Division of Disability Determinations scheduled two Consultative Examinations ("CE") for Torres to be examined by a specialist regarding his depression, anxiety, back problems and headaches.  (*Id.* at 29-30.)  The first CE was scheduled for October 1, 2009, and the second for October 19, 2009.  (*Id.* at 30.)  Torres failed to attend either CE appointments. (*Id.* at 27-28.)  His application was denied on November 13, 2009.  (*Id.* at 62.)

Torres requested a hearing before an ALJ on December 30, 2009.  (*Id.* at 69.)  On November 30, 2010, a Notice of Hearing was mailed to Torres's last known address indicating that the ALJ would hear his case on December 29, 2010, at 11:30 A.M., but Torres did not respond to the notice.  (*Id.* at 80.)  On December 15, 2010, the hearing office mailed another "Notice of Hearing – Important Reminder" to Torres and he did not respond.  (*Id.* at 95.)  On December 28, 2010, the hearing office attempted to call Torres to verify receipt of the Notice of Hearing and to advise him of the date, time and place of the hearing but the telephone number was no longer in service.  (*Id.* at 227.)  Torres did not appear at the scheduled hearing.  (*Id.* at 96.)  On December 30, 2010, a Notice to Show Cause for Failure to Appear was mailed to Torres ordering him to send a written statement explaining why he did not appear at the time set for the hearing, but he did not respond within the ten-day limit.  (*Id.*)

On January 19, 2011, ALJ Kenneth L. Scheer ("ALJ Scheer") found no good cause for Torres's failure to appear and dismissed his request for a hearing because of his failure to attend the hearings that had previously been scheduled for his case.  (*Id.* at 53.)  Accordingly, the

November 13, 2009 denial of benefits remains in effect. (*Id.* at 57.) On January 28, 2011, Torres asked the Appeals Council to review ALJ Scheer's dismissal. (*Id.* at 101.) The Appeals Council found that the ALJ did not follow proper contact procedures. (*Id.* at 60.) Torres had appointed Ufuoma Abamwa to act as his representative on July 15, 2010, and the hearing office failed to contact him through his representative and failed to send notices to both Torres and his representative, as required by HALLEX I-1-1-202[1]. (*Id.*) Because Torres is alleging disability due to mental impairment with agoraphobia and auditory hallucinations, the representative should have been contacted. (*Id.* at 60.) On March 29, 2012, the Appeals Council granted Torres's request for review, vacated ALJ Scheer's order of dismissal and remanded the case for further proceedings. (*Id.* at 58-60.)

Thereafter, ALJ Scheer scheduled a new hearing for September 10, 2012, and sent a Notice of Hearing to Torres indicating the time and place that the hearing would be held. (*Id.* at 102.) On September 10, 2012, Torres appeared at the hearing with his representative. (*Id.* at 35.) ALJ Scheer issued his decision on September 21, 2012, finding that Torres was not disabled under the Act and was not entitled to disability insurance benefits. (*Id.* at 7.) Torres requested review by the Appeals Council on November 5, 2012, indicating that drug and alcohol problems should not preclude him from receiving benefits, and that he had maintained sobriety while attending rehabilitation programs and getting psychiatric help. (*Id.* at 139, 237.) On February 27, 2014, the Appeals Council denied Torres's request for review and ALJ Scheer's decision became the Commissioner's final decision. (*Id.* at at 1-4.) Torres commenced this action on April 23, 2014. (Complaint ("Compl.") at 3.)

---

[1] HALLEX I-1-120: Authority of an Appointed Representative. (E)(2) Contact with Claimant and Representative: SSA must send all administrative notices and requests for information to both the claimant and the representative as follows: At the administrative law judge hearing and Appeals Council review levels, direct all notices, orders and decisions to the claimant, with a copy to the representative. (*Citing* 20 CFR §§ 404.1710, 404.1715, 416.1510 and 416.1515.)

**B.      Testimonial and Non-Medical Evidence**

    **1.      Torres's Testimony**

Torres was born on March 30, 1965, in New York and has lived in New York his entire life. (Tr. at 38.) He is forty-seven years old. (*Id.*) When he was in the tenth grade, he dropped out of school and served in the military. (*Id.*) He worked as a fire safety director for a security company called Fisher Brothers and, later, as an escort security guard for telephone company technicians until he lost his parents in 1993. (*Id.* at 39-40.) At that point, "drugs got deeper into [his] life." (*Id.* at 40.) Torres told Dr. Sharon Mevan that from 2006 to 2007, he did two bags of cocaine a day and six bags of heroin. (*Id.*) He robbed and stole to get money for the drugs. (*Id.* at 41.) Because of his history with drugs and alcohol, Torres has been attending a Methadone Maintenance Treatment Program ("MMTP") for the past seven years. (*Id.* at 37.) He attends MMTP approximately six days a week to fight for his sobriety, and his urine samples have been clean. (*Id.*) He also attends Narcotics Anonymous groups daily. (*Id.*)

Torres had asthma when he was younger and, although he has never used an inhaler or seen a doctor for the condition, he often has problems breathing and experiences shortness of breath. (Tr. at 42.) He has difficulty walking because his ankles swell up and, as a result, he can only walk about a block before he starts experiencing pain in his ankles. (*Id.* at 45.) Torres cannot stand for long periods of time because his ankles will start to hurt and he cannot sit for long periods of time because he will get anxious. (*Id.*) He cannot stay in enclosed spaces for long periods of time without needing to "get some air." (*Id.*) He also has problems lifting and carrying things because his back is not as healthy as it once was. (*Id.*)

Torres sees Dr. Schemata at Bronx Lebanon for his psychiatric problems, including bipolar and depression. (*Id.* at 43.) He "spaz[zes] out" and becomes violent if he forgets to take

his medication, but has never been hospitalized for psychiatric problems. (*Id.* at 43-44.) Torres

is currently homeless and his listed address is only for mailing purposes. (*Id.* at 38.) He stays in

shelters, with associates,[2] or with his sister. (*Id.*) He is unable to stay employed because of his

"mental capacity" and the stigma associated with his methadone treatment.[3] (*Id.* at 46.)

### 2.   Vocational Expert Raymond Suster's Testimony

At the ALJ hearing, ALJ Scheer asked vocational expert Raymond Suster ("Suster") to

classify Torres's past relevant work. (Tr. at 48.) Suster responded that a security guard job is

classified as DOT [Dictionary of Occupational Titles] number 372.667-034, SVP [Specific

Vocational Preparation] of 3. (*Id.*) ALJ Scheer asked Suster whether a hypothetical individual

with the same age, education and past relevant work experience as Torres, who is capable of

performing exertional demands on a full range of sedentary work limited to low stress, simple,

repetitive tasks, is capable of working as a security guard again. (*Id.*) Suster testified that such a

person could not perform the work of a security guard. (*Id.*) ALJ Scheer asked if there are any

other jobs available in the local or national economy for this hypothetical person. (*Id.*) Suster

answered that this hypothetical person could be: an order clerk, of which there are approximately

1,100 jobs in the New York City area and approximately 19,000 jobs available nationally; a

surveillance system monitor, of which there are 1,400 jobs in the New York City area and

approximately 74,000 jobs available nationally; or a clerical worker, of which there are

approximately 5,000 jobs in the New York City area and approximately 25,000 jobs nationally.

(*Id.*)

---

[2] Torres testified that he has no friends and that the people he stays with are only his "associates." (Tr. at 44.)
[3] ALJ Scheer commented that there were "a lot of people who are working on methadone" and that he "[knew] a bunch of them." (*Id.* at 46.)

### 3.    Disability Report – Form SSA-3367 and Form SSA-3368

According to a Disability Report that Interviewer J. Shimon Krini completed on August 12, 2009, Torres weighs 125 pounds. (Tr. 189.) He completed his GED in 1993. (*Id.* at 195.) Torres worked as a security escort for a telephone company from 1988 to 1990. (*Id.* at 191.) He worked as a private security guard from 1984 to 1988 and as a private security officer from 1991 to 2006. (*Id.*) He stopped working on December 28, 2006. (*Id.* at 190.)

Torres has anxiety, depression, backs spasms, chemical dependency, and migraine headaches that limit his ability to work. (*Id.* at 190.) Torres filled out an Activities of Daily Living report, dated September 1, 2009, which indicated that he is currently taking prescription medication including 100 mg of Paxil[4] a day and 100 mg of Seroquel[5] a day. (*Id.* at 220.) The report indicated that Torres's conditions impair his ability to walk, climb stairs, and stand for long periods of time. (*Id.* at 198-203.) His can only walk approximately one block before he needs to stop and take a fifteen to twenty minute rest. (*Id.*) Torres's condition requires him to use a cane and has affected his ability to sleep. (*Id.* at 202-03.) He has problems paying attention and "forget[s] a lot [of] things." (*Id.*) He experiences pain in his back and neck that spreads to his lower back and legs, which causes him to experience pain all day and all night. (*Id.* at 205-06.) Torres uses a heat pad and back brace to relieve the pain and he has been taking medication for the pain since January 11, 2007. (*Id.* at 206-07.) Aside from being forgetful and requiring a special reminder to take his medication, he has no problems with other personal care such as

---

[4] Paxil (paroxetine) is an antidepressant in a group of drugs known as "selective serotonin reuptake inhibitors" (SSRIs). Paroxetine affects chemicals in the brain that may become unbalanced. Paxil is used to treat depression, obsessive-compulsive disorder, anxiety disorders, post-traumatic stress disorder and premenstrual dysphoric disorder. *Paxil,* DRUGS.COM, http://www.drugs.com/paxil.html (last visited Aug.7, 2015).
[5] Seroquel (quetiapine) is an antipsychotic medicine. It works by changing the actions of chemicals in the brain. Seroquel is used to treat schizophrenia in adults and children who are at least 13 years old and bipolar disorder (manic depression) in adults. It is also used together with antidepressant medication to treat major depressive disorder in adults. *Seroquel,* DRUGS.COM, http://www.drugs.com/seroquel.html (last visited Aug.7, 2015).

grooming his hair, shaving, feeding himself, using the toilet and preparing his own meals. (*Id.* at 198-99.) Torres is also able to pay his bills, count change, manage his savings accounts, use checkbooks and use money orders. (*Id.* at 201.) However, he needs help doing laundry, house repairs, and yard work. (*Id.* at 200.) Torres has problems getting along with authority and taking orders as evidenced by the fact that he lost a job because he could not get along with his boss. (*Id.* at 203-04.)

## C.   Medical Evidence

### 1.   Bronx-Lebanon Hospital Center Clinic.

Torres has been receiving treatment at Bronx-Lebanon Hospital Center Clinic since July 25, 2007 (Tr. at 238.)  A July 18, 2009 letter signed by Ivan Melendez, a methadone counselor at Bronx-Lebanon Hospital Center, indicated that Torres was admitted to the MMTP on July 25, 2007. (*Id.*)  He is required to visit the clinic for medication and counseling six times per week. (*Id.*)

### 2.   Narco Freedom Inc.

Torres has been treated at Narco Freedom Inc., a chemical dependency outpatient treatment program from July 11, 2009, to the present.  (Tr. at 239-40.)  In two letters dated August 7, 2009, and signed by Anatol ZurKhan, a substance abuse counselor, Narco Freedom confirmed the July 11, 2009 date. (*Id.*)  These letters were used to refer Torres to CitiCare for assistance with his mental health issues (depression and anxiety) and to the Another Way program for assistance with his SSD application. (*Id.*)

### 3.   Sharon Revan, M.D., Internist at Industrial Medicine Associates, P.C.

Dr. Sharon Revan, a consulting physician at Industrial Medicine Associates in Bronx, New York, conducted an internal medicine examination as part of a Social Security CE on June 20, 2012. (Tr. at 264-67.)  During the examination, Torres complained of a history of anxiety,

major depression, insomnia and migraines. (*Id.* at 264.) He reported having migraines for the past five years, which occurred at least three times a week and lasted for a few hours each. (*Id.*) He denied having any head injury, nausea, or vomiting as a result. (*Id.*) Torres received a CAT scan and MRI of his head. (*Id.*) He reported having no issues sitting or lying down, but he experienced pain in his feet and felt shortness of breath if he climbed two flights of stairs or walked one to two blocks. (*Id.*) At the time of the examination he was taking Paxil, Seroquel, Bupropion and Methadone. (*Id.*) Torres also stated that he does not do any cooking, cleaning, laundry and shopping, but that if he had to, he could. (*Id.*) He can shower and dress himself without any assistance. (*Id.*)

As to Torres's drug history, he reported that from 1983 to 2007, he smoked two packs of cigarettes a day, used three bags of marijuana a day, and drank beer and liquor, and from 2006 to 2007, he used two bags of cocaine and six bags of heroin a day. (*Id.*)

During the physical examination, Dr. Revan observed that Torres appeared not to be in acute distress, had a normal gait and stance, and could walk on his heels and toes without any difficulty. (Tr. at 265.) He was able to squat fully, rise from a chair without difficulty, and needed no assistance changing or getting on and off the examination table. (*Id.*) Torres's skin examination produced no significant adenopathy[6]. (*Id.*) His head was normocephalic[7] and atraumatic[8], with normal facies.[9] (*Id.*) His eyes, ears, nose, teeth and throat were normal. (*Id.*)

---

[6] "Adenopathy" is any disease or enlargement involving glandular tissue. *Adenopathy*, MEDLINEPLUS MEDICAL DICTIONARY, http://www.merriam-webster.com/medlineplus/adenopathy (last visited Aug. 7, 2015)
[7] "Normocephalic" is a medical term referring to a person whose head and all major organs of the head are in a normal condition and without significant abnormalities.
[8] "Atraumatic" means not producing injury or damage.
[9]"Facies" is an appearance and expression of the face characteristic of a particular condition especially when abnormal. *Facies*, MEDLINEPLUS MEDICAL DICTIONARY, http://www.merriam-webster.com/medlineplus/facies (last visited Aug. 7, 2015.)

His neck was "supple" and contained no masses, "no JVD[10], thyromegaly[11] or bruits.[12]"  (*Id.*)

Torres's chest and lungs had a "normal AP diameter" and a "normal diaphragmatic motion."

(*Id.*)  His heart produced regular rhythm with "no murmur, gallop, or rub audible."  (*Id.*)

Torres's abdomen was "soft, non-tender, [with] no hepatosplenomegaly[13] masses."  (*Id.*)  His

joints were "stable and non-tender," and he had full "rotary movement bilaterally" and full

"strength in the upper and lower extremities."  (*Id.* at 266.)  There was no evidence of muscle

atrophy and his dexterity was in tact.  (*Id.*)

Dr. Revan diagnosed Torres with anxiety, major depression, insomnia and migraines.

(*Id.*)  It was noted that he had no limitations with: 1) his speech, vision or hearing; 2) his upper

extremities for fine and gross motor activity; 3) sitting and laying down; 4) personal grooming;

and 5) activities of daily living.  (*Id.*)  Dr. Revan found that Torres had moderate limitations with

standing due to his foot pain and with climbing stairs and walking due to his shortness of breath.

(*Id.*)

### 4.    Arlene Broska, Ph.D., Psychologist at Industrial Medicine Associates, P.C.

Dr. Arlene Broska, a consulting physician at Industrial Medicine Associates in Bronx,

New York, conducted a psychiatric CE of Torres on July 16, 2012.  (Tr. at 272-75.)  Dr. Broska

found no reports of psychiatric hospitalizations and no current medical conditions.  (*Id.* at 272.)

Torres claimed that he had been seeing a psychiatrist, Dr. Go, at Bronx Lebanon Hospital for

approximately six to seven years. However, Dr. Broska noted that Torres's treatment record

---

[10]  "JVD" stands for jugular venous distention

[11]  "Thyromegaly" is the enlargement of the thyroid gland. *Thyromegaly*, THEFREEDICTIONARY, http://medical-dictionary.thefreedictionary.com/Thyromegaly (last visited Aug. 7, 2015.)

[12]  "Bruits" is any of several generally abnormal sounds heard on auscultation, *Bruits,* MEDLINEPLUS MEDICAL DICTIONARY, http://www.merriam-webster.com/medlineplus/bruits (last visited Aug. 7, 2015.)

[13]  "Hepatosplenomegaly" is the swelling and enlargement of both the liver and spleen beyond its normal size. *Hepatosplenomegaly*, MEDLINEPLUS MEDICAL DICTIONARY, http://www.merriam-webster.com/medlineplus/hepatosplenomegaly (last visited Aug. 7, 2015.)

should be verified because she did not have access to any of his prior medical records. (*Id.*) Furthermore, Torres's prescriptions for psychiatric medication were all expired. (*Id.*)

Torres complained of difficulty falling asleep and experiencing poor appetite. (*Id.*) He denied any suicidal or homicidal intent or plans and he did not report any current symptoms of depression. (*Id.*) However, he does not like to be in enclosed spaces and referenced a time "when his train got stuck in the tunnel" that caused him to experience shortness of breath and tightness in his chest. (*Id.*)

Both of Torres's parents had a history of psychiatric and substance abuse problems. (*Id.* at 274.) As a result, he began drinking at the age of twenty-one and would drink up to four six-packs of beer per day. (*Id.*) He began using drugs at the age of thirteen and used four bags or marijuana a day, fifteen bags of heroin and fifteen bags of cocaine per day. (*Id.*) Since 2005, he has been attending MMTP at Bronx Lebanon Hospital five days per week and is taking 45mg of methadone per day. (*Id.*) Torres completed a detox followed by a twenty-eight day rehabilitation at Bronx Lebanon Hospital where he is presently attending group sessions in addition to Narcotics Anonymous and Alcoholics Anonymous. (*Id.*)

Torres's mental status examination revealed that his demeanor and responsiveness were cooperative and his "manner of relating, social skills, and overall presentation were adequate." (*Id.*) In terms of appearance, he was casually dressed and displayed appropriate eye contact, normal posture and normal motor behavior. (*Id.*) His speech was fluent, voice was clear and his expressive and receptive language abilities were adequate. (*Id.*) Dr. Broska found that Torres's thinking was coherent with no evidence of hallucinations, delusions, or paranoia in the

evaluation setting. (*Id.*) His sensorium[14] was clear and his attention and concentration skills

were intact. (*Id.* at 273.) Torres could perform simple calculations and even count forward by

threes. (*Id.*) His recent and remote memory skills are within normal limits. (*Id.*) Dr. Broska

estimated Torres's level of intellectual functioning to be below average. (*Id.*) He has poor

insight but fair judgment. (*Id.*)

As to his mode of living, he is able to (1) dress, bathe, and groom himself, (2) clean and

do his laundry by himself and (3) shop, travel independently, socialize, read and watch

television. (*Id.* at 273.)

Dr. Broska concluded that vocationally, Torres appears to be able to follow and

understand simple directions and instructions. (*Id.*) There is no problem with Torres's ability to

learn new tasks, perform simple tasks on his own, and perform complex tasks independently.

(*Id.*) He is able to maintain attention and concentration, make some appropriate decisions and

handle some level of stress. (*Id.*) Dr. Broska observed that the results of the examination was

consistent with substance abuse problems, but in itself, Torres's condition does not appear to be

significant enough to interfere with his ability to function on a daily basis. (*Id.*)

Dr. Broska's AXIS I[15] diagnosis indicated "opioid dependence in treatment with agonist

therapy" along with "polysubstance dependence," including alcohol, cannabis and cocaine in

remission. (*Id.* at 275.) AXIS II[16] diagnosis was deferred and there was no diagnosis for AXIS

---

[14] "Sensorium" is the part of the brain or the mind concerned with the reception and interpretation of sensory stimuli. *Sensorium*, MEDLINEPLUS MEDICAL DICTIONARY, http://www.merriam-webster.com/medlineplus/sensorium (last visited Aug. 11, 2015).
[15] "AXIS I" is part of the Diagnostic and Statistical Manual of Mental Disorders (DSM)'s "multiaxial" system for assessment. This is the top-level of the DSM multiaxial system of diagnosis. It represents acute symptoms that need treatment; Axis I diagnoses are the most familiar and widely recognized (e.g., major depressive episode, schizophrenic episode, panic attack. *Axis I*, PSYWEB.COM, http://www.psyweb.com/DSM_IV/jsp/Axis_I.jspn (last visited Aug. 7, 2015.)
[16] "AXIS II" is for assessing personality disorders and intellectual disabilities. These disorders are usually life-long problems that first arise in childhood, distinct from the clinical disorders of AXIS I which are often symptomatic of Axis II. *Axis II*, PSYWEB.COM, http://www.psyweb.com/DSM_IV/jsp/Axis_II.jsp (last visited Aug. 7, 2015.)

III.[17] (*Id.*) Dr. Broska recommended that Torres continue with his substance abuse treatment as

his prognosis is guarded. (*Id.*) She also stated that Torres may need assistance to manage money

because of the concern that he would use the money to procure drugs or alcohol. (*Id.*)

### 5.    Ihab Shehata, LMSW at Sound View Throgs Neck Community Health Center

In a letter to the Social Security Administration's Office of Disability dated September 6,

2012, Ihab Shehata, an LMSW at Sound View Throgs Neck Community Mental Health Center,

stated that Torres is presently attending the center and that he was being treated with individual

supportive verbal therapy as well as medication management. (Tr. at 276.) Torres had been a

patient of the program since May 16, 2012. (*Id.*) He was seeing Mr. Shehata for individual

supportive therapy once every two weeks and Jane Phelan, NP, for medication management

every month. (*Id.*) Torres was diagnosed with "bipolar I disorder," which included depression

and "psychotic features." (*Id.*) His medication included bupropion 75 mg tablets, methadone

HCI- 45mg solution, paroxetine 40mg tablets, and Seroquel XR 150mg tablets. (*Id.*)

### D.    ALJ Kenneth L. Scheer's Findings

On September 21, 2012, ALJ Kenneth L. Scheer issued his decision finding that Torres

has not been under a disability within the meaning of the Social Security Act from December 28,

2006. (Tr. at 10.) Based on the application for social security income filed on July 22, 2009,

ALJ Scheer decided that Torres is not disabled and therefore not eligible for supplemental

security income payments under section 1614(a)(3)(A) of the Social Security Act. (Tr. at 17.)

ALJ Scheer concluded that Torres's testimony conflicted with his medical evidence and the

vocational expert's testimony. (*Id.* at 15.) The ALJ found that Torres's condition, when

considered together with his age, education, work experience, and residual functional capacity,

---

[17] "Axis III" describes physical problems that may be relevant to diagnosing and treating mental disorders. *Axis III*, PSYWEB.COM, http://www.psyweb.com/DSM_IV/jsp/Axis_III.jsp (last visited Aug. 7, 2015.)

rendered him capable of making a successful adjustment to perform a significant number of existing jobs in the national economy, and thus, not disabled. (*Id.* at 17.)

At step one of the five-step sequential evaluation process, ALJ Scheer found that Torres has not engaged in substantial gainful activity since December 28, 2006. (*Id.* at 12.) At step two, ALJ Scheer found that Torres did have severe impairments due to his ankle pain, mood disorder, bipolar disorder and history of substance abuse with current opioid dependency. (*Id.* at 12.) At step three, ALJ Scheer found that while Torres's impairment were severe, they do not equal the level of severity to meet the criteria. (*Id.* at 13.) ALJ Scheer found that Torres has no restriction in activities of daily living and social functioning but moderate difficulties with regard to concentration. (*Id.*) His memory is within normal limits but is limited in intellectual functioning. (*Id.*) Torres has experienced no episodes of decompensation and "paragraph C" criteria[18] are also not satisfied. (*Id.*) At step four, ALJ Scheer concluded Torres would not be able to perform his past relevant work. (*Id.*) At step five, ALJ Scheer determined that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. (*Id.*)

On September 21, 2012, ALJ Kenneth L. Scheer issued his decision that Torres did not have a disability within the meaning of sections 216(i), 223(d) and§ 1614(a)(3)(A) of the Social Security Act, and had not been disabled since December 28, 2006, the date his application was filed. (Tr. at 17.) Torres was denied at step five of the Sequential Evaluation Process. (*Id.*) ALJ Scheer decided that Torres is "not disabled" because he is capable of making a successful adjustment to other work that exist in significant numbers in the national economy and is able to

---

[18] "Paragraph C" criteria is only assessed if the paragraph B criteria are not satisfied. For paragraph C, SSA will assess the degree of functional limitation that the impairment imposes to determine if it significantly limits the claimant's physical or mental ability to do basic work activities. SOCIAL SECURITY, DISABILITY EVALUATION UNDER SOCIAL SECURITY, http://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm

perform those jobs  (*Id.*)

## E.   Appeals Council Review

After ALJ Scheer denied Torres's claim on September 21, 2012, Torres requested review

by the Appeals Council on November 5, 2012. (Tr. at 237.)  He wrote a statement in support of

request for review of the hearing decision in which he argued that drug and alcohol problems

should not preclude him from receiving benefits.  (*Id.*)  Torres claimed he has maintained

sobriety while attending rehabilitation programs and obtaining psychiatric help.  (*Id.*)  He did not

submit additional evidence in his request for review.  (*Id.*)  The Appeals Council denied Torres's

request on February 27, 2014.  Administrative Appeals Judge, David E. Clark found no reason to

review ALJ Scheer's decision, which made ALJ Scheer's denial final.  (*Id.* at 1-3.)

## III.   DISCUSSION

## A.   Standard of Review

Upon judicial review, "[t]he findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g), 1383(c)(3).

Therefore, a reviewing court does not determine *de novo* whether a claimant is disabled.  *Brault*

*v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (citing *Pratts v.*

*Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *accord Mathews v. Eldridge*, 424 U.S. 319, 339 n.21

(1976) (citing 42 U.S.C. § 405(g)).  Rather, the court is limited to "two levels of inquiry."

*Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  First, the court must determine whether the

Commissioner applied the correct legal principles in reaching a decision.  42 U.S.C. § 405(g);

*Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999) (citing *Johnson*, 817 F.2d at 986); accord

*Brault*, 683 F.3d at 447.  Second, the court must decide whether the Commissioner's decision is

supported by substantial evidence in the record.  42 U.S.C. § 405(g).  If the Commissioner's

decision meets both of these requirements, the reviewing court must affirm; if not, the court may modify or reverse the Commissioner's decision, with or without remand. *Id.*

An ALJ's failure to apply the correct legal standard constitutes reversible error, provided that the failure "might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)); *accord Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  This applies to an ALJ's failure to follow an applicable statutory provision, regulation, or Social Security Ruling ("SSR").  *See, e.g.*, *Kohler*, 546 F.3d at 265 (regulation); *Schaal v. Callahan*, 933 F. Supp. 85, 93 (D. Conn. 1997) (SSR).  In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and fair record to explain her reasoning.  *Crysler v. Astrue*, 563 F. Supp. 2d 418, 428 (N.D.N.Y. 2008) (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999)).

If the reviewing court is satisfied that the ALJ applied correct legal standards, then the court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Brault*, 683 F.3d at 447 (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). The Supreme Court has defined substantial evidence as requiring "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord Brault*, 683 F.3d at 447-48.  The substantial evidence standard means once an ALJ finds facts, a reviewing court may reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i). The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which it is based." 42 U.S.C. §§ 405(b)(1). While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. See *Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler v. Astrue*, 546 F.3d 260, 269 (2d Cir. 2008) (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01 Civ. 1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence); *see also Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded evidence typically requires remand). The ALJ must discuss the "the crucial factors in any determination . . . with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

**B.      Determination of Disability**

**1.      Evaluation of Disability Claims**

Under the Act, every individual who is considered to be "disabled" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). The Act's definition of disability for the purposes of disability insurance and SSI is substantially the same. *Hankerson v. Harris*, 636 F.2d 893, 895 n. 2 (2d Cir. 1980). A person is considered disabled when he or she is unable to

engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A); *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997). Establishing the mere presence of an impairment is not sufficient for a finding of disability; the impairment must result in severe functional limitations that prevent the claimant from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(2); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). If a claimant is able to engage in his previous work or other substantial gainful work, regardless of whether such work exists in the immediate area in which he lives, whether a vacancy exists, or whether he would be hired for such work, he will not be found disabled under the Act. *See* 42 U.S.C. §§ 423(d)(2)(A), and 1382c(a)(3)(B). For the individual to be found disabled, both the medical condition and the inability to engage in gainful activity must last for twelve months. *See Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002).

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct the following five-step inquiry: (1) determine whether the claimant is currently engaged in any substantial gainful activity; (2) if not, determine whether the claimant has a "severe impairment" that significantly limits his ability to do basic work activities; (3) if so, determine whether the impairment is one of those listed in Appendix 1 of the regulations; if it is, the Commissioner will presume the claimant to be disabled; (4) if not, determine whether the claimant possesses the residual functional capacity ("RFC") to perform his past work despite the disability; and (5) if not, determine whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520; *Rosa*, 168 F.3d at 77; *Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999).

The Commissioner must assess the claimant's RFC to apply the fourth and fifth steps of the inquiry. A claimant's RFC represents the most that claimant can do despite his limitations. 20 C.F.R. § 416.945(a). The Commissioner must consider objective medical facts, diagnoses and medical opinions based on such facts, subjective evidence of claimant's symptoms, as well as the claimant's age, education, and work history. *Echevarria v. Apfel*, 46 F. Supp. 2d 282, 291 (S.D.N.Y. 1999); *Mongeur*, 722 F.2d at 1037 (citing *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)); 20 C.F.R. § 404.1526(b). To properly evaluate a claimant's RFC, the ALJ must assess the claimant's exertional capabilities, addressing his ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569(a). The ALJ is also required to evaluate the claimant's nonexertional limitations, including depression, nervousness, and anxiety. 20 C.F.R. §§ 404.1545(b), 404.1569(a).

The claimant bears the burden as to the first four steps of the evaluation process, while the Commissioner has the burden of proving the fifth step. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). A claimant's own testimony regarding his daily activities often supports a finding that the claimant is capable of performing gainful activity. *See Pena*, 968 F. Supp. at 938. If the claimant can establish that his severe impairment prevents him from returning to his previous work, the burden shifts to the Commissioner to demonstrate that the claimant retains the RFC to perform alternative substantial gainful activity which exists in the national economy. *Gonzalez*, 61 F. Supp. 2d at 29. A finding of "not severe" should be made if the medical evidence establishes only a "slight abnormality" which would have no more than a minimal effect on an individual's ability to work. *Rosado v. Astrue*, 713 F. Supp. 2d 347, 358 (S.D.N.Y. 2010).

Additionally, the claimant's statements regarding pain and other symptoms will be considered by the Commissioner, but these factors alone will not establish disability. 20 C.F.R. § 404.1529(a). Medical findings must support the conclusion that the claimant suffers from an impairment which could "reasonably be expected to produce the pain or other symptoms alleged by the claimant, and which, when considered with all other evidence, would lead to the conclusion that the individual is under a disability. *See* 20 C.F.R. §§ 404.1529, 416.929. If claimant's symptoms suggest a greater impairment than can be shown by objective evidence alone, other factors should be considered. *Echevarria*, 46 F. Supp. 2d at 292. These factors include: (1) the person's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and adverse side effects of medication taken by the individual to alleviate pain or symptoms; (5) treatment, other than medication, used to relieve pain; and (6) any other measures that the person uses or has used to relieve the pain or symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ may reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility. *See* Soc. Sec. Rul. 96-7p, 61 Fed. Reg. 34, 483 (1996), 1996 WL 374186 (S.S.A.); *Aponte v. Secretary, Department of Health and Human Services*, 728 F.2d 588, 591-92 (2d Cir.1984). However, the ALJ must give reasons "with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Echevarria*, 46 F. Supp. 2d at 292; *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see Lugo v. Apfel*, 20 F. Supp. 2d 662, 663-64 (S.D.N.Y. 1998).

2.      **The ALJ properly reviewed and considered the evidence, and applied the correct legal principles.**

a.      **The ALJ Properly Applied the Five-Step Sequential Analysis**

The first task of the Court is to determine whether the Commissioner applied the correct legal principles in determining Torres's eligibility. *Rosa*, 168 F.3d at 77. The Court finds that the ALJ properly followed the requisite sequential analysis in concluding that Torres (1) retained the residual functional capacity to perform other work and (2) is "not disabled."

To reach his conclusion, the ALJ conducted the five-step test required by 20 C.F.R. §§ 404.1527, 416.920. First, the ALJ found that Torres has not engaged in substantial gainful activity since December 28, 2006, the date of his application. (Tr. at 12.) At the second step of the evaluation, the ALJ found that Torres's ankle pain, mood disorder, bipolar disorder, history of substance abuse, and current opioid dependency constitute "severe" medically determinable impairments, and that such conditions would impose more than a slight limitation in functioning. (*Id.*) At the third step, the ALJ found that Torres's impairments did not equal the level of severity specified in Appendix 1 and thus that he could not be deemed disabled requiring him to proceed to the next step. (*Id.*) Torres did not have an impairment or combination of impairments which significantly limited, or would be expected to significantly limit his ability to perform basic work-related activities for twelve consecutive months, and therefore he did not have a "severe" impairment. (*Id.*); *Beauvoir*, 104 F.3d at 1433. At the next step, the ALJ found that Torres's impairments do not meet the criteria set forth in "paragraph B" or "paragraph C." In order to meet the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. (*Id.* at 13.) The ALJ found that Torres is not restricted in

his daily living activities or social functioning because Torres reported that he attended to household chores, went shopping, and used public transportation independently. (*Id.*) Torres has no difficulties in social functioning because Torres indicated that he socialized and did not seem to have limitations in his ability to relate adequately with others. (*Id.*) Torres has experienced no deterioration of mental health for an extended duration. (*Id.*) Torres has moderate difficulties with regard to concentration, persistence or pace and he is limited in intellectual functioning but his memory is within normal limits. (*Id.*) The ALJ found that Torres is unable to perform any past relevant work based on the vocational expert's testimony that the work of a security guard requires light exertion, and the ALJ's determination that Torres is no longer capable of such work. (*Id.*) At the last step, the ALJ found that Torres still had the residual functional capacity to perform the full range of simple, repetitive, sedentary work in low stress environments, which directed a finding of "not disabled" at step five of the process. (*Id.*) The ALJ applied the correct legal principles at each step of the test to reach his conclusion that Torres was not disabled under the Act and therefore, the Court finds that the ALJ properly followed the requisite sequential analysis as per the first prong of the standard of review. 42 U.S.C. § 405(g).

### b.   Substantial Evidence Exists to Support the ALJ's Determination

The ALJ reached his decision by observing Torres at the hearing and by examining the evidence, including medical records and expert testimony. (Tr. at 15.) First, the ALJ properly attempted to obtain the required medical treatment records by notifying Torres to furnish his medical records. (*Id.* at 14.) The ALJ sent Torres two written requests, dated September 15, 2009, and October 2, 2009, and advised Torres that non-compliance with the request for information would result in a decision based on the evidence that the ALJ had in the file. (*Id.* at

249) Torres did not comply with the requests to provide additional information. (*Id.*) The ALJ then required a consultative examination by a psychiatrist and an internist so that he could evaluate Torres's case because the evidence in file was insufficient to evaluate the severity of his impairment. (*Id.*) Because Torres did not provide his medical records upon request, his file contains no evidence of past treatment. (*Id.* at 14.) The ALJ noted that the record contains almost no evidence of treatment and that the only probative medical evidence in Torres's file were reports written by medical consultants. (*Id.*)

The ALJ reviewed all of the medical evidence in the file and found that the internist medical consultant concluded that Torres had foot pain that caused a moderate limitation in his ability to stand. (Tr. at 14.) However, the consultant concluded that Torres is still able to sit and use his upper extremities for gross and fine motor activity, perform activities of daily living or attend to his personal care. (*Id.*) The physical examination was "relatively benign" and did not reveal that Torres has any additional limitations. (*Id.*)

The ALJ reviewed the psychiatric consultation in the file. Although he had "an opioid dependency and polysubstance dependency in remission," Torres stated that he was no longer engaging in such behavior. (*Id.* at 15.) The record shows that he attends treatment program for his addiction problems. (*Id.*) Dr. Broska found that Torres expressed no symptoms of depression during his psychiatric consultation. (*Id.*) The psychiatrist examiner found below average intellect and poor insight but the examiner concluded that Torres "can follow and understand simple directions and instructions." (Tr. at 273.) His records show that he can learn new tasks and perform complex tasks independently. (*Id.*) The psychiatric evidence indicates that Torres can deal with some stress.

The ALJ found that Torres would be restricted to simple, repetitive tasks that involved low stress. Furthermore, Dr. Broska found that Torres's results "appear to be consistent with substance abuse problems" but it was not "significant enough to interfere with claimant's ability to function on a daily basis." (Tr. at 273-75.) According to the Medical Vocational Rule 201.28 and Rule 201.21, if Torres had the RFC to perform the full range of sedentary work, a finding of "not disabled" would be directed. (*Id.* at 16.) At the hearing, the ALJ asked the vocational expert whether jobs exist for individuals with Torres's age, education, work experience and RFC. (*Id.*) The vocational expert testified that there were jobs that Torres could perform despite his conditions. (*Id.*) As there is no other evidence to indicate that his impairments limited Torres's ability to perform unskilled, sedentary work, the ALJ properly concluded that Torres did not have a disability. (*Id.*)

Additionally, the ALJ found that while Torres's impairments could cause some symptoms that he is alleging, his statements are not credible because they are inconsistent with the RFC assessment. (*Id.* at 15.) An individual's statement as to pain or other symptoms is not, alone, conclusive evidence of disability. 20 C.F.R. §§ 404.1529(b), 416.929(b). The ALJ considered Torres's allegations of pain, including his testimony at the hearing that his ankle swells up. (*Id.* at 42.) Dr. Revan stated in her report that Torres has moderate limitations for standing because of foot pain. (*Id.* at 266) The foot pain, however, is the only evidence of Torres's physical limitations. Dr. Revan found that Torres's joints were stable and nontender without any redness, heat or swelling. (*Id.*) Dr. Revan also found that Torres has no limitations with sitting. (*Id.*) Torres claimed that he has back pain but the medical examiner's report indicates that his lumbar spine shows "flexion [ninety] degrees" with "full lateral flexion bilaterally and full rotation." (*Id.* at 266.) The ALJ also considered Torres's statement of his

23

lifestyle and daily activities. Torres stated at the hearing that he has problems walking far distance but that he mostly take mass transit. (*Id.* at 45.) Torres also reported that he did his own household chores, used public transportation independently, which can require standing and climbing stairs. (*Id.* at 200-01.)

There was substantial evidence on the record for the ALJ to find that Torres is capable of sedentary work, because sedentary activity involves no more than two hours of walking or standing in a workday. (*Id.* at 15.) Sedentary work is performed primarily in a seated position. Taking the evidence as a whole, the ALJ properly concluded that Torres did not have a severe impairment, which would preclude him from performing light and sedentary work activities at the unskilled level. (*Id.*)

In determining whether Torres could do other work, the ALJ properly considered Torres's residual functional capacity and his vocational factors. (Tr. at 16.) The ALJ found that the lack of medical evidence asserting that Torres was unable to perform light work, and the fact that Torres could communicate in English and had a high school education, supported the conclusion that Grid Rule 202.20 would direct a finding that he is not disabled because there is other work that Torres can do. (*Id.*)

Torres's activities such as riding the subway, walking in the park, doing laundry, mowing, and going outside six times a week, are inconsistent with his claim that he is severely impaired. (*Id.* at 200-07.) There is no medical evidence that Torres's alleged "anxiety depression, back spasms, migraine headaches and chemical dependency" interfered with his ability to work, and the ALJ properly concluded that it is likely that his conditions will not preclude him from performing other jobs. (*Id.* at 190.)

Accordingly, the ALJ's decision that Torres is not eligible for SSI benefits was determined under the correct legal standard and supported by substantial evidence.

## C.   CONCLUSION

For the reasons set forth above, I recommend that Defendant's motion be **GRANTED**, and that the Complaint be **DISMISSED**.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Ronnie Abrams, 40 Foley Square, Room 2203, and to the chambers of the undersigned, 500 Pearl Street, Room 1970.  Failure to file timely objections shall constitute a waiver of those objections in both the District Court and on later appeal to the United States Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed.R.Civ.P. 72, 6(a), 6(d).

**DATED: August 12, 2015**
**New York, New York**

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**